**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 12-cv-01096-REB-CBS

POTTER VOICE TECHNOLOGIES LLC,

     Plaintiff,

vs.

GOOGLE, INC.,
HTC AMERICA, INC.,
SONY MOBILE COMMUNICATIONS AB,
LG ELECTRONICS MOBILECOMM U.S.A., INC.,
MOTOROLA MOBILITY, LLC.,
ZTE (USA) INC.,
KYOCERA INTERNATIONAL, INC.,
SHARP CORPORATION,
SHARP ELECTRONICS CORPORATION,
HUAWEI DEVICE USA, INC.,
PANTECH WIRELESS, INC.,
RESEARCH IN MOTION LIMITED,
RESEARCH IN MOTION CORPORATION,
MICROSOFT CORPORATION, and
NOKIA, INC.,

     Defendants.

---

**ORDER CONSTRUING DISPUTED PATENT CLAIM TERMS**

---

**Blackburn, J.**

     This matter is before me on **Plaintiff Potter Voice Technologies LLC's Opening**

**Claim Construction Brief** [#269][1] filed October 30, 2012.  The defendants filed a

response [#285], and the plaintiff filed a reply [#287].  The parties seek construction of

certain disputed terms in a patent held by the plaintiff, Potter Voice Technologies LLC.  On

---

     [1]  "[#269]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

April 5, 2013, I heard evidence and oral argument on the claim construction issues. I construe the disputed claim terms of the patent in suit as described in this order.

## I. JURISDICTION

I have jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

## II. BACKGROUND

This case concerns United States patent number 5,729,659 (the '659 patent). The patent application was filed on June 6, 1995, and the patent was issued on March 17, 1998. The patent was issued to Jerry L. Potter, but is owned now by the plaintiff, Potter voice Technologies LLC. The patent is titled "Method and Apparatus for Controlling a Digital Computer Using Oral Input." *Fourth Amended Complaint for Patent Infringement And Jury Demand* [#271], Exhibit A, p. 1 (the '659 patent). In its complaint [#271], Potter asserts that the defendants each infringe the '659 patent. The construction of claims 1, 4, 6, 7, and 22 through 24 of the '659 patent are at issue here.

A patent infringement claim involves a two-step analysis. First, the court "must determine, as a matter of law, the correct scope and meaning of a disputed claim term." ***CCS Fitness, Inc. v. Brunswick Corp.***, 288 F.3d 1359, 1365 (Fed. Cir. 2002). Second, the properly construed patent claims must be compared to the accused device to see whether the device contains all of the limitations of the claimed invention. *Id*. The accused device is the device that allegedly infringes the plaintiff's patents. If the accused device contains all of the limitations of the patented invention, then the accused device infringes the patent. In this order, I adopt the stipulated construction of claim terms proposed by the parties, and, additionally, I construe the disputed claim terms of the '659

patent therby, resolving the **Markman**[2] issues presented by the parties.

### III. STANDARD OF REVIEW

Claim construction is a matter of law for the court. **Markman v. Westview Instruments, Inc.**, 517 U.S. 370, 384-88 (1996). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." **Embrex, Inc. v. Service Engineering Corp.**, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (internal quotations and citation omitted). Claim construction begins with a "heavy presumption" that the claim terms carry the ordinary and customary meaning that would be given to them by one skilled in the relevant art. **Texas Digital Systems, Inc. v Telegenix, Inc.**, 308 F.3d 1193, 1202 (Fed. Cir. 2002).

Claim construction begins with an examination of the intrinsic evidence. Intrinsic evidence includes the claims, the specification, and the prosecution history, if the history is in evidence. **CCS Fitness**, 288 F.3d at 1365. In addition, dictionaries, encyclopedias, and treatises may be used as intrinsic evidence to assist in determining the ordinary and customary meanings of claim terms. **Texas Digital Systems**, 308 F.3d at 1202. Extrinsic evidence may be consulted when, after considering the intrinsic evidence, there remains ambiguity in the meaning of the claim language. **Phillips Petroleum Co. v. Hunstman Polymers Corp**., 157 F.3d 866, 876 (Fed. Cir. 1998). Extrinsic evidence also may be consulted to enhance the court's understanding of the technology involved in the patent. **DeMarini Sports, Inc. v. Wroth, Inc**., 239 F.3d 1314, 1323 (Fed. Cir. 2001). Extrinsic evidence includes expert testimony.

The patent specification "is the single best guide to the meaning of a disputed

---

[2] A common and familiar shorthand reference to the seminal case of **Markman v. Westview Instruments, Inc.**, 517 U.S. 370, 384-88 (1996).

term." ***Vitronics Corp. v. Conceptronic, Inc.***, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "[A] claim must be read in view of the specification of which it is a part." ***Renishaw PLC v. Marposs Societa' per Azioni***, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  Two fundamental rules guide claim construction in light of the specification.  First, a limitation may not be read into a claim based on the specification or written description.  Second, one may look to the specification to define a term already in a claim limitation.  ***Id***.  These two rules lay out the general relationship between the claims and the written description.  ***Id***.

I have considered the intrinsic evidence submitted by the parties in their ***Markman*** briefs, the written argument submitted by the parties, and the oral argument presented by the parties at the April 5, 2013, ***Markman*** hearing.  As cited in this order, I have also considered extrinsic evidence in the form of testimony and declarations presented by experts.  In addition, I have considered definitions from ***Webster's Third New International Dictionary***, (1971), as described in this order.  Having considered this evidence, the arguments of the parties, and the applicable law, I construe the disputed terms as stated in this order.

## IV.  LANGUAGE OF PATENT CLAIMS AT ISSUE

Construction of terms used or implicated in claims 1, 4, 6, 7, and 22 through 24 of the '659 patent is at issue here.  Claims 1 and 22 are independent claims.  Claims 4, 6, and 7 depend on claim 1.  Claims 23 and 24 depend on claim 22.  The language of each of the claims at issue is quoted below.  Terms in bold are terms for which a construction is necessary.  As specified below, the parties have agreed to constructions of certain terms.

**1**.  A method for controlling **a digital computer** using oral input, comprising:

(a) **providing receiving means** and **a digital computer**;

(b) receiving oral input comprising a plurality of words;

(c) **generating input information** corresponding to said oral input;

(d) **associatively searching a tabular data structure comprising labels** using at least a first part of said input information to locate at least a first **label** in such **tabular data structure** relating to said input information; and

(e) **determining content information** relating to said oral input.

**4**.  A method, as claimed in claim 1, further comprising:

(i) using said content information to identify an operation to be performed on **said data**; and

(ii) performing the identified operation on **said data** in **a digital computer**.

**6**.  A method, as claimed in claim 1, further comprising:

(i) outputting a request for further input information relating to said input information.

**7**.  A method, as claimed in claim 1, wherein said plurality of words comprises a verb or verb phrase and at least a first noun or noun phrase.

**22**.  An apparatus for using oral input to control **a digital computer** comprising:

(a) **receiving means** for receiving oral input;

(b) **word recognition means**, operatively associated with said receiving means, for **generating input information**;

(c) **a digital computer**, operatively associated with said word recognition means;

(d) **storage means**, located within said **digital computer**, **for storing data in a tabular data structure**;

(e) **search means**, located within said **digital computer**, **for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such input information**;

(f) **content determination means**, located within said **digital computer**, **for determining content information relating to input information**; and

(g) **processing means**, located within said **digital computer**, **for processing data**.

**23**.  An apparatus, as claimed in claim 22, further comprising **output means** operatively associated with the **digital computer**.

**24**.  An apparatus, as claimed in claim 22, further comprising:

(i) **audio generator means for generating audio output information**;

(ii) **speech synthesizer means for generating audio output signals**; and

(iii) **audio output means for outputting audible speech**.

*'686 Patent* [#271-1], 18:45 - 20:53.

## V.  CLAIM CONSTRUCTION

As specified below, the parties have agreed to a proposed construction of seven of the terms in question.   The parties dispute the proper construction of 12 other claim terms.

### A.  Constructions Stipulated by the Parties

The parties have agreed to a proposed construction of the following seven terms in question.

**1**.  "**tabular data structure**" (claims 1 & 22) - "a data structure comprised of rows and columns."

**2**.  "**label**" (claims 1 & 22) - "a text description associated with the contents of a row or column."

**3**.  "**a digital computer**" (claims 1, 4, 22, & 23) - "one or more electronic devices that process digital data."

**4**. "**receiving means [for receiving oral input]**" (claims 1 & 22) - Should be construed under 35 U.S.C. § 112, ¶ 6.  Function: "receiving oral input."  Structure: "a microphone and equivalents thereof."

**5**. "**storage means . . . for storing data in a tabular data structure**" (claim 22) - Should be construed under 35 U.S.C. § 112, ¶ 6.  Function: "storing data in a tabular data structure."  Structure: "any memory device and equivalents thereof."

**6**. "**output means**" (claim 23) - Should be construed under 35 U.S.C. § 112, ¶ 6. Function: "outputting information."  Structure: "a speaker or display screen and equivalents thereof."

**7**. "**audio output means for outputting audible speech**" (claim 24) - Should be construed under 35 U.S.C. § 112, ¶ 6.  Function: "outputting audible speech."  Structure: "a speaker and equivalents thereof."

Applying the relevant standards for claim construction, I approve the constructions above.

B.  Construction of Disputed Claim Terms
Not Involving Means-Plus Function Analysis

The parties dispute the proper construction of six terms used in the '659 patent for which consideration of a means-plus-function analysis is not necessary.

1.  Preamble of claim 1 - "**A method for controlling a
digital computer using oral input, comprising**"  (claim 1).

The preamble of claim 1 and claim 1(a) read:

**1**.  A method for controlling a **digital computer** using oral input, comprising:

(a) providing receiving means and a **digital computer**;

'*659 Patent*, 18:47 - 49.

According to the defendants, the "digital computer" element of claim 1(a) must be

construed as stated in the preamble, and the digital computer named in claim 1(a) must be controlled using oral input.  Unless the digital computer in claim 1(a) is the same as the digital computer cited in the preamble, the defendants assert, claim 1(a) is indefinite under 35 U.S.C. § 112, ¶ 2, because it fails to particularly point out and distinctly claim the subject matter of the invention.  This is true, the defendants assert, because the digital computer recited in claim 1(a) is never mentioned again in the claim, leaving the purpose and scope of that digital computer completely ambiguous.  That ambiguity is resolved, the defendants claim, by looking to the preamble of claim 1 and the specification.  On this basis, the defendants propose a construction of the preamble which provides that the digital computer of claim 1(a) is controlled using oral input.

Generally, a preamble limits a claim only if the preamble "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim. ***Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc***., 289 F.3d 801, 808 (Fed. Cir. 2002) (citation omitted). A preamble is not limiting if the body of a claim "defines a structurally complete invention" and the preamble simply states "a purpose or intended use for the invention." ***Id***. (***quoting Rowe v. Dror***, 112 F.3d 473, 478 (Fed.Cir. 1997)).

Claims 1(a) and (b) include the elements "a digital computer" and "receiving oral input."  The body of claim 1, consisting of claims 1(a) through 1(e), recites a structurally complete invention.  In the context of claim 1, the term "digital computer" does not need further definition.  The preamble simply describes the general purpose of the invention. The preamble of claim 1 need not be construed as a claim term.

**Construction:** No construction necessary.

**2**.  "**Associatively searching**" or "**associatively searching [a/said]
tabular data structure comprising labels**" (claims 1 & 22).

Claims 1 and 22 contain the phrase "associatively searching" in the contexts shown

below.

**1**.  A method for controlling a digital computer using oral input, comprising:
*   *   *   *
(d) **associatively searching a tabular data structure
comprising labels** using at least a first part of said input
information to locate at least a first **label** in such **tabular data
structure** relating to said input information;

**22**.  An apparatus for using oral input to control a digital computer
comprising:
*   *   *   *
(e) search means, located within said digital computer, for
**associatively searching said tabular data structure**,
comprising means for identifying **labels** within said **tabular
data structure** which relate to at least a first part of such input
information;

*'659 Patent*, 18:47 - 57; 20:23 - 27.

The '659 patent provides that "(a)ssociative searching is a technique of accessing

or identifying an entire datum from a body of data by specifying any portion of the datum."

*'659 Patent*, 3:4-6.  The '659 patent provides further that "a tabular data structure is a

structure comprised of rows and columns."  *'659 Patent*, 3:14 - 15.  "Each row and column

may have a label associated with it.  The tabular data structure allows for the data

elements which uniquely identify an object and its attributes to be stored in a row which

retains the association between the elements."  *'659 Patent*, 3:15 - 20.  "The relationship

between elements of a row reflects the association between an object and its attributes . .

. ."  *'659 Patent*, 6:1 - 2.  "The columns of the tabular data structure are thus established

by attribute type and object type."  *'659 Patent*, 6:14 - 15.

Potter proposes a construction of "associatively searching" which adopts the

definition used in the '659 patent: "accessing or identifying an entire datum from a body of data by specifying any portion of the datum."  As Potter notes, generally "the specification is the single best guide to the meaning of a disputed term . . . [and] the specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005).  A patent specification "may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs."  *Id*. at 1316.

Potter opposes the contention of the defendants that "associatively searching" must be construed as part of a larger phrase, "associatively searching [a/said] tabular data structure comprising labels."  Potter contends its construction of "associatively searching" can be combined with the agreed constructions of "tabular data structure" and "label." This combination of three construed terms would result in "a technique of accessing or identifying an entire datum from a body of data by specifying any portion of the datum" contained in "a data structure comprised of rows and columns" comprised of labels, where a label is "a text description associated with the contents of a row or column."  The defendants contend this string of constructions is incomprehensible and will not permit a determination of the infringement claims at issue here.

At the *Markman* hearing, the defendants presented a definition of associative searching through an expert, Dr. Charles Weems.  Dr. Weems testified credibly that at the time the Potter patent application was filed in June 1995, the phrase "associative searching of a tabular data structure" had a meaning to those skilled in the art of associative computing.  *Hearing transcript* [#415], 60:18 - 61:3.  Dr. Weems testified that in associative computing, it is assumed that the data to be searched is in a table of rows

and columns.  *Id.*, 45:1 - 3.  As noted above, the parties agree that a tabular data structure is a data structure comprised of rows and columns.  In associative searching, Dr. Weems testified, the rows represent values that are associated with one another and the columns are the general definitions of individual attributes of the objects in the table.  *Id.*, 45:3 - 5.  This is consistent with the descriptions in the patent.  *'659 Patent*, 6:1 - 2, 14 - 15.  For example, a table may contain rows each of which contains a name, an address, and a telephone number.  The name, address, and telephone number in each row would be associated with each other in some way.  The columns in such a table would organize the table by attributes, name, address, and telephone number.

Dr. Weems testified that in associative searching "(w)e're always searching the columns to find the matches because that's what an associative search does."  *Id.*, 55:16 - 18.  "We keep the associations in the rows.  We keep the attributes in the columns. And we want to be able to search any of the attributes."  *Id.*, 55:18 - 21.  The "underlying mechanism is that one . . . searches an entire column fitting the attributes that you think need to participate in that search in order to locate the values that you're interested in."  *Id.*, 58:16 - 19.  "(I)n the case of an associative search, the fundamental element is that you are searching whole columns in order to look for matches in order to identify associated rows."  *Id*, 63:21 - 24.

Addressing the details of associative searching, Dr. Weems said an associative search does not necessarily involve a search of every column in the table.  Rather, such a search involves any one or more columns which contain the relevant attribute or attributes.  *Id.*, 52:2 - 13; *Weems declaration* [#286-1], ¶ 26.  Searching the name, address, and telephone number table described above, for example, one could designate telephone number as the relevant attribute and specify a telephone number to be searched.  An

associative search could search the whole telephone number column of the table to find any row or rows which contain the specified telephone number.  The other columns in the table, containing name and address attributes, are not necessarily involved in such an associative search but the search would identify the row which contains the information associated with the identified telephone number.

Addressing the meaning of the phrase "associative searching of a tabular data structure" to one skilled in the art at the time the '659 Patent application was filed in June 1995, Dr. Weems testified: "It meant that you would use a search - - you would have a tabular data structure that has associations within rows.  The attributes of those associations would be arranged in columns, and one would perform a search on the columns to identify matching rows in order to retrieve associated information with those things that were selected."  *Id*., 59:18 - 60:3.  "(O)ne skilled in the art would know what an associative search is, that it's a search by columns to identify rows."  *Id*., 65:3 - 5.

Dr. Weems was asked to consider the definition of associative searching used in the '659 patent: "a technique of accessing or identifying an entire datum from a body of data by specifying any portion of the datum."  *'659 Patent*, 3:4-6.  Dr. Weems said: "Well, this isn't actually defining an associative search; this is saying that an associative search is one technique for identifying an entire datum from a body of data by specifying any portion of the datum.  So, there are other techniques.  There are nonassociative searches that could be used to achieve the same end."  *Id*., 64:5 - 18.

At the ***Markman*** hearing and in its briefing, Potter does not raise significant disputes about the view of Dr. Weems concerning associative searches.  Potter emphasizes that even in the view of Dr. Weems, an associative search does not necessarily involve a search of all columns in a table.  Potter emphasizes also that the

'659 patent contains a definition of associative searching which is different from that offered by Dr. Weems as the commonly understood view of associative searching in June 1995.  Potter contends the definition specified in the '659 Patent must be accepted and applied because, with regard to this term, the patentee acted as his own lexicographer. *Phillips v. AWH Corp.*, 415 F.3d at 1316.

The defendants contend the definition of "associatively searching" in the '659 patent must be construed in the context of an associative search of a tabular data structure.  This is so, the defendants contend, because an associative search of a tabular data structure is what differentiates the '659 Patent from prior art.  *Response* [#285], p. 1. Further, the defendants note, the "Summary of the Invention" portion of the patent explains how the associative search of the tabular data structure identifies a row or rows with the largest number of hits:

> The input information is then used to associatively search the contents of a tabular data structure organized in rows and columns.  The row or rows which contain the largest number of data elements equivalent to the elements of the word group are identified.

*'659 Patent*, 2:48 - 53.  In essence, the defendants assert, the '659 Patent repeatedly relies on and defines its claims with the phrase "associative search of a tabular data structure."  In the claims of the '659 Patent, the phrase "associatively searching" never appears without being tied to a "tabular data structure."  In this context, the defendants claim, the broad definition of "associatively searching" found in the patent does not fit the details of the device  specified in the patent.  The defendants note that a separate definition of "tabular data structure" is necessary because that phrase sometimes appears in the claims of the patent without being tied to "associatively searching."

The defendants propose a construction of "associatively searching [a/said] tabular

data structure comprising labels" as "identifying a row in a tabular data structure comprising labels by searching the contents of each column of the structure."  However, this construction is fatally flawed because it requires a search of "each column of the structure."  There is no dispute that an associative search of a tabular data structure does not necessarily require a search of each column or all columns of the tabular data structure.  Based on the testimony of Dr. Weems, a more accurate construction would be "identifying a row or rows in a tabular data structure comprised of labels by searching the contents of any column or columns of the structure that is/are relevant to the search."

Either one of the constructions stated above adopts the generally accepted definition of associative searching based on the extrinsic evidence and effectively ignores the definition of "associatively searching" in the patent. The defendants argue this is proper in the context of associatively searching as used in the '659 Patent.  "When a patent . . . describes the features of the present invention as a whole, this description limits the scope of the invention."  *Verizon Services Corp. V. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (internal quotation and citations omitted).  In addition, the defendants note, a court "does not interpret claim terms in a vacuum, devoid of the context of the claim as a whole."  *Kyocera Wireless Corp. V. International Trade Com'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008) (citation omitted).  In *Kyocera*, the court considered the phrase "a first wireless communication and a second wireless communication different from the first wireless communication."  *Id*. at 1345.  "The phrase does not, in and of itself, suggest any limitation on the degree of difference between the two wireless communications.  The phrase merely requires that the communications be 'different,' without suggesting any manner or degree of difference."  *Id*. at 1347.  Reading the specification, the *Kyocera* court defined the relevant level of difference.  "The

14

specification consistently teaches that the relevant difference between the two claimed wireless communications is their method of communication." *Id*. at 1348. "The specification provides the necessary context for the difference between the claimed first and second wireless communications. The difference envisioned by the claim is a difference in their method of communication." *Id*. at 1349.

Notably, neither *Verizon* nor *Kyocera* involved construction of a claim term which altered a specific definition of a claim term specified in the patent by the patentee. The defendants cite no authority for the proposition that this court may deviate from the definition of "associatively searching" stated in the '659 Patent. The long-standing rule is that a definition specified in a patent must be accepted and applied because, with regard to this term, the patentee acted as his own lexicographer. *Phillips v. AWH Corp.*, 415 F.3d at 1316, 1321. This is true even when the definition in the patent differs from the ordinary meaning of the term. *Id*. at 1316.

In *Trading Technologies Intern., Inc. v. eSpeed, Inc*., 595 F.3d 1340, 1353 (Fed. Cir. 2010), the court approved a claim construction which added one word and deleted another word from a claim term as defined by the patentee in the patent. These two changes were based on the patent specification and prosecution history. Those changes to the definition of the patentee were relatively subtle. In the present case, the defendants propose to supplant the definition of "associatively searching" provided by the patentee and replace that definition with a definition consistent with the ordinary meaning of "associatively searching." I conclude that such a dramatic change to the definition of a claim term by the patentee is not merited. Rather, I conclude that, for better or worse, the patentee acted as his own lexicographer and the specified definition must be accepted and applied.

**Construction:** "associatively searching" is construed to mean "a technique of accessing or identifying an entire datum from a body of data by specifying any portion of the datum."

### 3. "**Providing**" (claim 1).

The word "providing" is used in element (a) of claim 1. Claim 1 includes the word "providing" in the following context:

**1**. A method for controlling a digital computer using oral input, comprising:

(a) **providing** receiving means and a digital computer;

*'659 Patent*, 18:57-49. Relying on dictionary definitions, Potter proposes that "providing" be construed as "supplying or making available." The defendants contend that, given the context of claim 1, this construction does not make sense because claim 1 is not directed to a means to supply or make available a receiving means and a digital computer. Rather, given the context of claim 1, the defendants propose that "providing" be construed as "utilizing."

> Properly viewed, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.

***Phillips v. AWH Corp.***, 415 F.3d 1303, 1321 (Fed. Cir. 2005). Given the context of claim 1 of the '659 patent, and the '659 patent as a whole, the ordinary meaning of the word "providing" to those skilled in the art is "utilizing." Those skilled in the art could not reasonably construe "providing" in this context as meaning a method or means of supplying or making available a receiving means and a digital computer.

**Construction:** "providing" is construed to mean "utilizing."

### 4.  "Generating input information [corresponding to said oral input]"
#### (claims 1 & 22).

The phrase "generating input information" is used in slightly different contexts in claims 1 and 22.  The nature of input information is relevant to a determination of how input information is generated.  Thus, in the quotation of the relevant language of the claims of the '659 patent, below, I highlight the phrase "input information."

**1**.  A method for controlling a digital computer using oral input, comprising:

(a) providing receiving means and a digital computer;

(b) receiving oral input comprising a plurality of words;

(c) **generating input information** corresponding to said oral input;

(d) associatively searching a tabular data structure comprising labels using at least a first part of said **input information** to locate at least a first label in such tabular data structure relating to said **input information**; and

(e) determining content information relating to said oral input.

**6**.  A method, as claimed in claim 1, further comprising:

(i) outputting a request for further **input information** relating to said **input information**.

**22**.  An apparatus for using oral input to control a digital computer comprising:

(a) receiving means for receiving oral input;

(b) word recognition means, operatively associated with said receiving means, for **generating input information**;

(c) a digital computer, operatively associated with said word recognition means;

(d) storage means, located within said digital computer, for storing data in a tabular data structure;

> (e) search means, located within said digital computer, for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such **input information**;
>
> (f) content determination means, located within said digital computer, for determining content information relating to **input information**;

*'659 Patent*, 18:47 - 59, 19:10 - 12, 20:23 - 40.

Potter proposes that the term "generating input information" be construed as "generating digital data representing the words comprising the oral input." The '659 patent describes input information as follows: "The word recognition device 112 receives the electrical signals from the microphone 110 and converts the signals into input information, which is a digital data stream representing the words comprising the oral input." *'659 Patent*, 8:29 - 32. Potter contends the patentee defined the term "input information" in this portion of the patent and this definition should control construction of the term "generating input information."

The defendants propose "converting the received oral input into recognized words" as the proper construction. Noting the definition of "input information" in the '659 Patent at column 8, lines 29 - 32, the same definition cited by Potter, the defendants note that this definition begins with a requirement of a "word recognition device" which converts oral input into "input information." The defendants rely also on the phrase "word recognition means" in claim 22(b) to support a construction which requires recognized words. The defendants contend the proposed construction of Potter is too broad because the phrase "digital data representing the words comprising the oral input" does not require that the input information generated be limited to recognized words. Absent a recognized words limitation, the defendants assert, the input information could include a digital audio

recording of the oral input yet such a recording does not include a requirement of recognized words.

In claim 22, a word recognition means associated with a receiving means is used for "generating input information."  In claim 1, in contrast, the phrase "generating input information" is not associated with the term "word recognition means." However, in claim 1, oral input comprised of a plurality of words results in the generation of "input information corresponding to said oral input."  In both claims, words are the source material used to generate input information; words are the essential ingredient of input information. Notably, this input information – a word or words – has no purpose in the patent unless it can be used to search a tabular data structure comprised of labels.  In claim 1(d) and claim 22(e), input information is used to search a tabular data structure comprising labels. Under the agreed construction of the parties, a "label" is a text description used in the tabular data structure.  A "label" also involves words.

Given these requirements and limitations of the '659 Patent, input information must consist of words.  Thus, the phrase "generating input information" must refer to the generation of words.  A spoken word is a speech sound or series of sounds that symbolizes and communicates a meaning without being divisible into smaller units capable of individual use.  *Webster's Third New International Dictionary*, 2633 (1971). A written word is a written or printed character or combination of characters representing a spoken word.  *Id*.  A word must communicate a meaning; it must be recognized.  As defined by the patentee, "input information" consists of a digital data stream representing words. *'659 Patent*, 8:29 - 32.   This data stream is created by a word recognition device based on oral input. *Id*.  As described in the patent, recognition of words is a key step in "generating input information."  On this basis, I construe "generating input information" to

mean "generating digital data which represents the words recognized by a word recognition device based on oral input into the word recognition device."

**Construction:** "generating input information" is construed to mean "generating digital data which represents the words recognized by a word recognition device based on oral input into the word recognition device."


### 5.  "**Determining content information**" (claims 1 & 22).

The phrase "determining content information" is used in claims 1 and 22.  In claim 1, the relevant phrase is "determining content information relating to said oral input."  In claim 22, the relevant phrase is "determining content information relating to input information."  This phrase is highlighted in the quotation of the relevant language of the claims of the '659 patent, below.

**1**.  A method for controlling a digital computer using oral input, comprising:

    (a) providing receiving means and a digital computer;

    (b) receiving oral input comprising a plurality of words;

    (c) generating input information corresponding to said oral input;

    (d) associatively searching a tabular data structure comprising labels using at least a first part of said input information to locate at least a first label in such tabular data structure relating to said input information; and

    (e) **determining content information** relating to said oral input.

**22**.  An apparatus for using oral input to control a digital computer comprising:

    (a) receiving means for receiving oral input;

(b) word recognition means, operatively associated with said receiving means, for generating input information;

(c) a digital computer, operatively associated with said word recognition means;

(d) storage means, located within said digital computer, for storing data in a tabular data structure;

(e) search means, located within said digital computer, for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such input information;

(f) content determination means, located within said digital computer, for **determining content information** relating to input information;

*'659 Patent*, 18:47 - 59, 20:23 - 40.

The '659 patent describes the determination of content information as follows:

Content information is determined by the use of information regarding the position of a word or phrase relative to the other words or phrases, the use of rules derived from syntactic and semantic rules and conventions of the written and spoken natural language and the use of information derived from the tabular data structure. The syntactic content information which is generated may include classifying words and phrases as parts of speech . . . . The semantic content information may include information relating to the classification of the word (i.e., the word "red" is a color) which is derived from the tabular data structure as well as information relating to the possible meaning(s) of each word.

*'659 Patent*, 2:55 - 3:3.

Potter proposes "determining meaning" as a proper construction.  The defendants propose "classifying words as to their meanings or parts of speech."  Potter objects to the proposed construction of the defendants as too narrow because it requires the classification of words by their meanings or parts of speech.  As described in the '659 Patent, as quoted above, determination of content information is not, Potter contends, limited to such classification of words.  The defendants contend the construction proposed

by Potter provides no guidance as to what "content information" is or how that information is determined.

I conclude that the determination of content information, as described in the '659 Patent, is not nearly as narrow as the proposed construction of the defendants.  I construe "determining content information" to mean "determining the meaning or possible meaning of a word or phrase."

**Construction:** "determining content information" is construed to mean "determining the meaning or possible meaning of a word or phrase."

### 6.  "**Said data**" (claim 4).

The phrase "said data" is highlighted in the quotation of the relevant language of claim 4, below.

> **4**.  A method, as claimed in claim 1, further comprising:
>
> (i) using said content information to identify an operation to be performed on **said data**; and
>
> (ii) performing the identified operation on **said data** in a digital computer.

'*659 Patent*, 19:1 - 10.

Potter proposes "data in the tabular data structure" as a proper construction.  The defendants contend the term "said data," as used in claim 4, is indefinite for lack of an antecedent basis in claim 1.  As Potter notes, the word "data" appears in claim 1 only in the phrase "tabular data structure."  Potter points also to other language in the patent as relevant to a construction of "said data."

> Typically, input information comprises noun phrases, nouns, adjectives and pronouns describing a object, a function, or a group of either objects or functions. Such descriptors may refer to existing data stored in a tabular data

structure, new data to be stored in the data structure or indicate the locations where data is to be stored following a processing operation.

Content information may also be used to identify an operation to be performed on certain data. The operation relates to the parts of the input information which are identified as action elements, such as verbs and verb phrases or clauses.

*'659 Patent*, 8:56 - 67.

"(T)he failure to provide [an] explicit antecedent basis for terms does not always render a claim indefinite." ***Energizer Holdings, Inc. v. International Trade Com'n***, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (internal quotation omitted).  "(A) claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness."

***Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.***, 359 F.3d 1367, 1371 (Fed. Cir. 2004).

"In ruling on a claim of patent indefiniteness, a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." ***Id***.

"[B]ecause claim construction frequently poses difficult questions over which reasonable minds may disagree, proof of indefiniteness must meet 'an exacting standard.' " ***Haemonetics Corp. v. Baxter Healthcare Corp.***, 607 F.3d 776, 783 (Fed.Cir.2010) (quoting ***Halliburton Energy Servs., Inc. v. M–I LLC*** , 514 F.3d 1244, 1249 (Fed.Cir.2008)). Thus, "[a]n accused infringer must ... demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Id*. "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity ... and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." ***Exxon***, 265 F.3d at 1375 (citation omitted).

***Wellman, Inc. v. Eastman Chemical Co.***, 642 F.3d 1355, 1366 (Fed. Cir. 2011).

While the use of "said data" in claim 4 is not the most detailed and clear choice of words possible, this term is far from insolubly ambiguous.  The sole reference to "data" in

claim 1 is in the phrase "tabular data structure."  In the context of the '659 patent, it is reasonable to assume this structure contains data.  Notably, the phrase "a digital computer," as used in claim one, means "one or more electronic devices that process digital data."  In this context, I conclude that the construction proposed by Potter is correct.  "Said data" is construed to mean "data in the tabular data structure."

**Construction:** "said data" is construed to mean "data in the tabular data structure."

### C.  Construction of Disputed Claim Terms
### Involving Means-Plus Function Analysis

The remaining 6 claim terms for which the parties seek a construction involve application of a means-plus-function analysis under 35 U.S.C. § 112, ¶ 6.  For some of these claims, the parties agree that a means-plus function analysis is applicable.  For others, Potter contends a means-plus-function analysis is not applicable.  Under § 112, ¶ 6, a patentee may express a limitation in a patent claim "as a means or a step for performing a specified function without the recital of structure ... in support thereof. . . ." 35 U.S.C. § 112, ¶ 6.  Such a claim, however, will not be interpreted to cover all structures ... which would perform that function, but only "the corresponding structure ... described in the specification and equivalents thereof." *Id*.  The applicability of § 112, ¶ 6 to a given patent claim limitation is a question of law.  *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004).  If the word "means" appears in a claim limitation in combination with a function, then § 112, ¶ 6 is presumed to apply.  *Micro Chem., Inc. v. Great Plains Chem. Co*., 194 F.3d 1250, 1257 (Fed. Cir. 1999).

However, when "a claim recites a function, but then goes on to elaborate sufficient structure, material,  or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format."  *Sage Products, Inc. v. Devon*

*Industries, Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997).  If a claim term is used in common parlance or by persons of skill in the pertinent art to designate a structure, the term does not fall under § 112, ¶ 6, even if the term covers a broad class of structures and identifies the structures by their function.  *Greenberg v. Ethicon Endo-Surgery, Inc*., 91 F.3d 1580, 1583 (Fed. Cir. 1996).  A term that has achieved recognition as a noun denoting a structure does not trigger the application of § 112, ¶ 6, even if the noun is derived from the function performed.  *Lighting World, Inc. v Birchwood Lighting, Inc*., 382 F.3d 1354, 1360 (Fed. Cir. 2004).

Patents involving functions performed by computers, such as the '659 Patent, involve specific requirements in the context of a means–plus-function claim.  Generally, disclosure of a general purpose computer as the structure to perform a function, without more, is not sufficient to "limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112, ¶ 6."  *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1364 (Fed. Cir. 2012) (citation and internal quotation omitted).

> (A) general purpose computer programmed to carry out a particular algorithm creates a "new machine" because a general purpose computer "in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." [*WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339 (Fed.Cir.1999)], *quoting In re Alappat*, 33 F.3d 1526, 1545 (Fed.Cir.1994). The instructions of the software program in effect "create a special purpose machine for carrying out the particular algorithm." *WMS Gaming*, 184 F.3d at 1348. Thus, in a means-plus-function claim "in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *Id*. at 1349.

*Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).  However, when a function "can be achieved by any

general purpose computer without special programming," a general purpose computer can be a sufficient structure without disclosure of an algorithm. *In re Katz Interactive Call Processing Patent Litigation,* 639 F.3d 1303, 1316 (Fed. Cir. 2011); *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1364 - 1365 (Fed. Cir. 2012). When disclosure of an algorithm is required in a computer-related means-plus-function claim, the algorithm

> may be expressed in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure. Even descried in prose, an algorithm is still a step-by-step procedure for accomplishing a given task.

*Ergo Licensing*, 673 F.3d at 1365.

### 1. "Word recognition means . . . for generating input information" (claim 22).

The relevant portion of claim 22 is quoted below. The parties agree that this claim term is subject to construction under § 112, ¶ 6. I agree.

> **22**. An apparatus for using oral input to control a digital computer comprising:
>
> > (a) receiving means for receiving oral input;
> >
> > (b) **word recognition means**, operatively associated with said receiving means, **for generating input information**;
> >
> > (c) a digital computer, operatively associated with said word recognition means;

*'659 Patent*, 20:23 - 30.

The '659 Patent specifies further:

> The word recognition device 112 receives the electrical signals from the microphone 110 and converts the signals into input information, which is a digital data stream representing the words comprising the oral input. Suitable word recognition devices, such as the Soundblaster Model SB 1759 are commercially available.

*'659 Patent*, 8:29 - 34.

The parties agree the relevant function is "generating input information," but they dispute the construction of the corresponding structure.  Potter proposes that the structure be construed as "a device (e.g. a SoundBlaster Model SB 1759) that receives electrical signals from the receiving means and converts the signals into input information, such as a digital data stream representing the words comprising the oral input, and equivalents thereof."  The defendants propose "SoundBlaster Model SB 1759" and argue that, beyond this specific device, the structure element of this claim term is indefinite for failure to disclose a sufficient structure.

Other than a SoundBlaster Model SB 1759, claim 22 does not adequately disclose the structure of a processor or any kind of algorithm for use on a general purpose computer that receives electrical signals from the receiving means and converts the signals into input information.  Absent the disclosure of any other structure, the corresponding structure aspect of  "word recognition means . . . for generating input information" must be construed as "a Soundblaster Model SB 1759."

**Construction:** "word recognition means . . . for generating input information" is construed as a means-plus-function claim under 35 U.S.C. § 112, ¶ 6.

**Function**: "generating input information."

**Corresponding structure**: "a SoundBlaster Model SB 1759."

## 2.  "Search means . . . for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such input information" (claim 22).

The relevant portion of claim 22 is quoted below.  The parties agree that this claim

term is subject to construction under § 112, ¶ 6.  I agree.

> **22**.  An apparatus for using oral input to control a digital computer comprising:
>
> *   *   *   *
>
> > (e) **search means**, located within said digital computer, **for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such input information**;

*'659 Patent*, 20:23 - 37.

The defendants contend this part of claim 22 must be interpreted as two separate means-plus-function claims, one based on the "search means" and the second based on the "means for identifying labels" nested in the "search means" claim.  I conclude that such a bifurcated interpretation is not necessary because the "means for identifying labels" is the specified requirement for a "search means."  In other words, the "search means" in claim 22(e) is comprised of and defined by a "means for identifying labels within said tabular data structure."

The defendants contend also that the '659 Patent does not disclose a sufficient corresponding structure.  First, the defendants contend, the specification does not clearly link a digital computer to the recited function.  Claim 22(e) clearly links the search means to a digital computer when it says "search means, located within said digital computer . . . ."  Further, the patent specifies: "Operating within the digital computer are a search device 118 for associatively searching a tabular data structure . . ."  *'659 Patent*, 8:43 - 45.

Second, the defendants contend Potter has failed to identify a sufficient structure, here one or more appropriate algorithms clearly linked to the specific recited function or to incorporate any such algorithm into its claim construction.  I disagree.  As noted by Dr. David Klausner, an expert on whose analysis Potter relies, the '659 Patent discloses

software algorithm structures for performance of an associative search to perform this function. *Klausner declaration* [#269-1], ¶¶ 32 - 33.  Dr. Kalusner cites Figures 11 - 15 of the '659 Patent and the following portions of the '659 Patent 4:48 - 58, 11:8 - 27, and 12:10 - 60.   Dr. Klausner opines credibly that a person of ordinary skill in the art at the time of the invention would have understood these algorithms to be the structures associated with the function in question here.  *Id.*, ¶ 34.

The defendants have not shown by clear and convincing evidence that one of ordinary skill in the art would not understand the disclosed algorithm for a search means for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such input information.  ***Wellman, Inc. v. Eastman Chemical Co.***, 642 F.3d 1355, 1366 (Fed. Cir. 2011) (accused infringer must demonstrate by clear and convincing evidence that one of ordinary skill in the art could not discern the boundaries of the claim).  The defendants have not shown that the disclosed structure is indefinite.  Given the text of the claim term at issue and the related information specified in the patent, I construe this term as stated below.

**Construction:** "search means, located within said digital computer, for associatively searching said tabular data structure, comprising means for identifying labels within said tabular data structure which relate to at least a first part of such input information" is construed as a means-plus-function claim under 35 U.S.C. § 112, ¶ 6.

**Function**: "associatively searching a tabular data structure using labels in the tabular data structure relating to at least a first part of the input information."

**Corresponding structure**: "software running on a digital computer, as specified in Figures 11 - 15 and the text descriptions at 4:48 - 58, 11:8 - 27, and 12:10 - 60 of the patent, which can search a tabular data structure and identify labels with a tabular data structure which relate to at least a first part of input information."

### 3. "Content determination means . . . for determining content information relating to input information" (claim 22).

The relevant portion of claim 22 is quoted below.  The parties agree that this claim term is subject to construction under § 112, ¶ 6.  The parties agree the relevant function is "determining content information relating to input information."  I agree with both conclusions.

> **22**.  An apparatus for using oral input to control a digital computer comprising:
>
> *   *   *   *
>
> (f) **content determination means**, located within said digital computer, **for determining content information relating to input information**;

*'659 Patent*, 20:23 - 40.

The parties have two disputes about the corresponding structure.  First, the defendants contend the '659 patent indicates that the content determination device is a hardware structure and not software.  This is true, the defendants assert, because the only device clearly linked to content determination is a box called "content determination device."  *'659 Patent*, 8:42 - 50.  I disagree.  The portions of the '659 Patent which describe the content determination function tie that function to associative searching and indicate that content determination is accomplished by software running on a digital

computer which applies associative search techniques. *'659 Patent*, 2:55 - 3:3, 9:13 - 10:11, 13:20 - 14:24.

Second, if content determination is a software function linked to a digital computer, the defendants assert, Potter has not identified any algorithm to perform the function on a computer.  As noted by Dr. David Klausner, an expert on whose analysis Potter relies, the '659 Patent discloses algorithm structures for determining content information relating to input information.  *Klausner declaration* [#269-1], ¶¶ 36 - 38.  Dr. Kalusner cites the '659 Patent at 2:55 - 3:3, 9:23 - 38, 9:50 - 67, 13:20 - 45, and 13:45 - 14:25.  On this issue, I find the '659 Patent at 9:13 - 9:22, 9:39 - 9:49, 10:1 - 10:11 also to be relev ant.  Dr. Klausner opines credibly that algorithms for content determination are disclosed in these portions of the patent and that a person of ordinary skill in the art at the time of the invention would have understood these algorithms to be the structures associated with the function in question here.  *Id*., ¶ 39.  In prose, the cited portions of the patent describe the application of rules for content determination related to input information.

The defendants do not provide any expert opinion in support of their contention that the '659 patent fails to disclose sufficiently an algorithm to perform the content determination function.  The defendants have not shown that one of ordinary skill in the art would not understand the disclosed algorithm for content determination as described in the '659 Patent. The defendants have not shown by clear and convincing evidence that the structure for determining content information relating to input information is indefinite.  Given the text of the claim term at issue and the related information specified in the patent, I construe this term as stated below.

**Construction:** "Content determination means . . . for determining content information relating to input information" is construed as a means-plus-function claim under 35 U.S.C. § 112, ¶ 6.

**Function**: "determining content information relating to input information."

**Corresponding structure**: "software running on a digital computer, as specified in 2:55 - 3:3, 9:13 - 10:11, 13:45 - 14:25, which can determine content information relating to input information."

### 4. "**Processing means . . . for processing data**" (claim 22).

The relevant portion of claim 22 is quoted below.  The parties agree that this claim term is subject to construction under § 112, ¶ 6.  The parties agree the relevant function is "processing data."  I agree with both conclusions.

**22**.  An apparatus for using oral input to control a digital computer comprising:

\*   \*   \*   \*

(g) **processing means**, located within said **digital computer, for processing data**.

*'659 Patent*, 20:23 - 42.

The parties propose "a processor and equivalents thereof" as the structure associated with this function.  The defendants contend this structure is not sufficient for the purpose of a means-plus-function claim.  *Joint claim construction statement* [#262], p. 9.  The defendants do not address this claim term in their response brief [#285].  The specification lists specific types of processors that can be used, including an Intel 80486 processor and a single-instruction, multiple-data (SIMD) processor.  *'659 Patent*, 9:14-15, 16:62 - 17:9.  This is an instance in which the function, processing data, can be achieved by the processor in a general purpose computer, such as an Intel  80486.  For this

purpose, the processor of a general purpose computer discloses sufficiently a structure.

*See, e.g., In re Katz Interactive Call Processing Patent Litigation,* 639 F.3d 1303,

1316 (Fed. Cir. 2011); *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361,

1364 - 1365 (Fed. Cir. 2012).  Given the text of the claim term at issue and the related

information specified in the patent, I construe this term as stated below.

**Construction:** "Processing means . . . for processing data" is construed as a

means-plus-function claim under 35 U.S.C. § 112, ¶ 6.

**Function**: "processing data."

**Corresponding structure**: "the processor in a general purpose computer."


**5**.  "**Audio generator means for generating audio output information**"
**&**
**6.  "Speech synthesizer means . . . for generating output signals**"  (claim 24).

These two terms present essentially identical issues.  Thus, I construe these terms

jointly.  The relevant portion of claim 24 is quoted below.

**24**.  An apparatus, as claimed in claim 22, further comprising:

> (i) **audio generator means for generating audio output information**;

> (ii) **speech synthesizer means for generating audio output signals**;

'659 Patent, 20:47 - 52.

Potter contends these two claim terms are not means-plus-function claims subject

to construction under 35 U.S.C. § 112, ¶ 6.  The defendants contend both terms are

subject to a means-plus-function analysis.  *Joint claim construction statement* [#262], p.

11.  The defendants do not address these claim terms in their response brief [#285].  Both

claim terms use the word "means" and recite a function, generating audio output

information and generating audio output signals.  Thus, the means-plus-function analysis of § 112, ¶ 6 is presumed to apply.  ***Micro Chem., Inc. v. Great Plains Chem. Co***., 194 F.3d 1250, 1257 (Fed. Cir. 1999). These claims, however, both recite a function and elaborate a sufficient structure, within the claim itself, to perform that function.  As a result, these claims are not in means-plus-function format.  ***Sage Products, Inc. v. Devon Industries, Inc.***, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997).

The structures recited in these claims are "audio generator" and "speech synthesizer."  Dr. Klausner states in his declaration that, at the time of the invention of the '659 Patent, there were many known methods for implementing audio generators and speech synthesizers.  *Klausner declaration* [#269-1], ¶¶ 44, 49.  At the time of the invention, a person of ordinary skill in the art would "understand 'audio generator' to mean any software that generates digital audio information such as the audio generator systems publicly available at the time." *Id*., ¶ 45.  "'Speech synthesizer' is a term of art that refers to a specific device or software the converts digital data into a format that can be translated into audible sounds."  *Id*., ¶ 48.  At the time of the invention, a person of ordinary skill in the art would understand the phrase "speech synthesizer means . . . for generating output signals," as used in claim 24, to mean such a speech synthesizer.  *Id*., ¶ 50.  Given the text of the claim terms at issue, I construe these terms as stated below.

<u>**Construction:**</u> "Audio generator means for generating audio output information" is construed to mean "any software that generates digital audio information.:

<u>**Construction:**</u> "Speech synthesizer means . . . for generating output signals" is construed to mean "a device or software the converts digital data into a format that can be translated into audible sounds."

## VI.  CONCLUSION

Applying the relevant standards of claim construction, I approve the stipulated claim constructions of the parties.  Applying those same standards, and for the reasons stated above, I construe the disputed terms in the '659 Patent as specified in this order.

**THEREFORE, IT IS ORDERED** that the claim terms of the '659 Patent shall be construed as stated in this order.

Dated May 12, 2015, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge